## LINCOLN STORAGE WAREHOUSES v. COMMISSIONER OF INTERNAL REVENUE.

No. 10082.

United States Court of Appeals Third Circuit.

Argued Feb. 9, 1950.

Decided July 10, 1950.

Andrew B. Crummy, Newark, N. J., for petitioner.

Meyer Rothwacks, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Robert N. Anderson, Maryhelen Wigle, Special Assistants to the Attorney General on the brief), for respondent.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The question raised on this petition for review is whether Section 24(c) of the Internal Revenue Code, 26 U.S.C.A. § 24(c) [1] precluded the deduction by the taxpayer of amounts credited on its books in 1943 and 1944 as salary, interest and rents to its sole stockholder and, upon his death, to his estate. The issue turns on whether the amounts actually paid are to be applied first to the past indebtedness or first to the current indebtedness of the taxpayer to its sole stockholder and his estate.

The facts which were stipulated and found by the Tax Court [2] accordingly, are as follows:

Taxpayer is a corporation organized in 1917 under the laws of the State of New Jersey. From December 31, 1917, all of taxpayer's outstanding stock was owned by Reginald T. Blauvelt, Sr. ("Blauvelt"), who died on June 26, 1944. On that date the Estate of Reginald T. Blauvelt, Sr., Deceased ("Estate"), became the owner of all of taxpayer's outstanding stock and continued to own all of such stock at all times material to this proceeding. Also on that

1. § 24. *Items not deductible.*
* * *
"(c) *Unpaid expenses and interest.* In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued——
"(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and
"(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and
"(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b)."

2. The Findings of Fact and Opinion of the Tax Court are reported at 13 T.C. 33.

date, all legal claims which Blauvelt had against taxpayer became assets of the Estate.

At all times material to this proceeding taxpayer used the accrual method of accounting in keeping its books of account and in preparing and filing its income and excess profits tax returns. At all times material to this proceeding Blauvelt used the cash receipts and disbursement method of accounting in keeping his books of account and in preparing and filing his income tax returns.

The following schedule in the margin[3] shows a summary of the account of Blauvelt on the books of the taxpayer for the period January 1, 1935, to June 30, 1944, and a summary of the account of the Estate on the books of the taxpayer for the period July 1, 1944, to December 31, 1944, and the amounts reported in the income tax returns of Blauvelt and of the Estate for the years 1935 to 1944, inclusive, on account of sums accrued on the books of the taxpayer for rent, salary, and interest.

None of the payments by the taxpayer to Blauvelt or to the Estate referred to in the schedule, which were debited to the accounts of Blauvelt and the Estate was applied either by the taxpayer or the recipients in satisfaction of any particular credit or credits in the accounts of the recipients.

In its income and declared value excess profits tax return for 1943, the taxpayer deducted from gross income and showed as credits to the account of Blauvelt a total of $49,401.71, consisting of salary ($6,000.00), interest ($6,801.71), and rents ($36,600.00). The Commissioner disallowed $27,132.66 of the deductions contending that the deducted

3.

| Year | Salary | Interest | Rents | Loans and Advances | Total Credits |
|---|---|---|---|---|---|
| 1935 | $4,800.00 | $ | $38,100.00 | $ | $42,900.00 |
| 1936 | 4,800.00 | | 38,100.00 | 1,000.00 | 43,900.00 |
| 1937 | | | 38,100.00 | 375.00 | 38,475.00 |
| 1938 | | | 38,100.00 | 140.00 | 38,240.00 |
| 1939 | | | 38,100.00 | | 38,100.00 |
| 1940 | | | 38,100.00 | | 38,100.00 |
| 1941 | | | 38,100.00 | | 38,100.00 |
| 1942 | 6,000.00 | | 37,725.00 | | 43,725.00 |
| 1943 | 6,000.00 | 6,801.71 | 36,600.00 | 1,990.00 | 51,391.71 |
| 1944 (A) | 3,000.00 | 1,118.88 | 18,250.00 | 1,024.00 | 23,392.88 |
| 1944 (B) | | 755.13 | 18,350.00 | 128.50 | 19,233.63 |

| Year | Payments and Other Charges | Bal. of Acct. End of Year Debit Credit | Reported in Personal Income Tax Returns | | |
|---|---|---|---|---|---|
| | | | Salary | Interest | Rents |
| 1935 | $29,370.92 | $37,138.80 | $5,037.00 | $ | $24,311.00 |
| 1936 | 28,074.35 | 52,964.45 | 4,800.00 | | 22,995.00 |
| 1937 | 33,249.31 | 58,190.14 | | | 32,874.31 |
| 1938 | 30,735.90 | 65,694.24 | | | 30,735.90 |
| 1939 | 35,280.00 | 68,514.24 | | | 35,275.00 |
| 1940 | 34,308.33 | 72,305.91 | | | 34,313.33 |
| 1941 | 47,935.00 | 62,470.91 | | | 47,935.00 |
| 1942 | 50,466.26 | 55,729.65 | 6,000.00 | | 37,725.00 |
| 1943 | 64,388.75 | 42,732.61 | 6,000.00 | 6,801.71 | 36,600.00 |
| 1944 (A) | 33,147.45 | 32,978.04 | 3,000.00 | 1,118.88 | 18,250.00 |
| 1944 (B) | 34,092.32 | 18,119.35 | | 755.13 | 18,350.00 |

(A) Reginald T. Blauvelt, Sr., Personal Account to June 30, 1944.
(B) Estate of Reginald T. Blauvelt, Sr., Deceased, to December 31, 1944.

amount should have been applied to the reduction of a credit balance owing Blauvelt growing out of transactions of prior years and that the amount was not wholly a permissible deduction during the taxable year involved.[4]

In its income and declared value excess profits tax return for 1944 the taxpayer deducted from gross income and showed as credits to the account of Blauvelt a total of $22,368.88 consisting of salary ($3,000.00), interest ($1,118.88), and rents ($18,250.00). The Commissioner disallowed $1,816.85 of the deductions for the same reason as that given to support the disallowance in the taxpayer's 1943 return.[5] After examination of the income tax returns of Blauvelt for the years 1942, 1943, and for the period January 1, 1944 to June 26, 1944, and of the Estate for the period June 26, 1944, to December 31, 1944, the Internal Revenue Agent in charge of reports of examination addressed to the Estate a proposal to adjust the reported incomes as stated in the margin.[6]

4. The Commissioner's disallowance was computed as follows:

| | | |
|---|---:|---:|
| Credit balance due Reginald T. Blauvelt, Sr., for interest, rents and salary as of December 31, 1943 (see note 3) | | $42,732.61 |
| Payments made to Reginald T. Blauvelt, Sr., for interest, rents and salary during the period January 1, 1944 to March 15, 1944, incl. | $14,649.95 | |
| Loans and advances by Reginald T. Blauvelt, Sr., to petitioner during the period Jan. 1, 1943, to December 31, 1943, incl. | 950.00 | 15,599.95 |
| Amount disallowed for interest, rents and salary allegedly paid to Reginald T. Blauvelt, Sr., for the year 1943 | | $27,132.66 |
| Interest (see note 3) conceded by taxpayer to be properly disallowed without regard to section 24(c) Internal Revenue Code | | 6,801.71 |
| Portion of disallowed deduction at issue | | $20,330.95 |

5. The Commissioner's disallowance was computed as follows:

| | | |
|---|---:|---:|
| Credit balance due Estate of Reginald T. Blauvelt, Sr., Deceased, for interest, rents and salary as of December 31, 1944 (see note 3) | | $18,119.35 |
| Payments made to Estate of Reginald T. Blauvelt, Sr., Deceased, for interest, rents and salary during the period January 1, 1945 to March 15, 1945, incl. | $15,150.00 | |
| Loans and advances made by Reginald T. Blauvelt, Sr., and by the Estate of Reginald T. Blauvelt, Sr., Deceased, to taxpayer during the period January 1, 1944 to December 31, 1944, incl. (see note 3) | 1,152.50 | 16,302.50 |
| Amount disallowed for interest, rents and salary allegedly paid to Reginald T. Blauvelt, Sr., and to the Estate of Reginald T. Blauvelt, Sr., Deceased for the year 1944 | | 1,816.85 |

6. (a) 1942: Blauvelt reported $43,725 for salary ($6,000) and rent ($37,725). The actual cash received was $50,466.26; the difference of $6,741.26 was added since Blauvelt was on the cash basis.

(b) 1943: Blauvelt reported $49,401.71 for salary ($6,000), interest ($6,801.71) and rent ($36,600). The actual cash received was $62,398.75 less loans and advances, and accordingly the difference of $12,997.04 was added.

(c) January 1, 1944 to June 26, 1944: there was reported for Blauvelt $22,368.-88 for salary ($3,000), interest ($1,118.-88) and rent ($18,250). The actual cash received was $32,123.45 less loans and advances, and accordingly the difference of $9,754.57 was added.

(d) 1945: the Estate reported $19,-105.13 for rent ($18,350) and interest ($755.13) on the accrual basis. The Estate however, collected $32,978.04 rep-

The deficiencies there asserted in income tax of Blauvelt for 1943, and for the period January 1, 1944 to June 26, 1944, and of the Estate for the period June 26, 1944, to December 31, 1944, were assessed by the Commissioner.

█ It is the Commissioner's position that all the items accrued in 1943 and 1944 in favor of Blauvelt and his Estate were not actually paid in each taxable year or within the two and one-half months following. Therefore, he contends that, since the credits fall within Section 24(c) (1), and since there is no question but that the remaining two provisions of Section 24(c) are fulfilled, they are not deductible [7] to the extent stated. To reach this conclusion, the Commissioner applied the payments made by the taxpayer first to credits accrued prior to 1943, represented by the credit balance on its books at the close of 1942. The Tax Court, four judges dissenting, upheld the Commissioner's determination. Because the transactions occurred in New Jersey, it followed the New Jersey law as construed by it, that where several debts are owed and neither creditor nor debtor makes an application of the payments, the court would make the application and would apply the payments to the earliest or least secure debt.

The taxpayer, on the other hand, contends that the payments should be first applied to current credits, and in that way takes them out of Section 24(c) (1), for then the payments will have been made within each taxable year and the two and one-half months following. In support, it asserts that the interests of the creditors and debtor warrant application of the payments to current debts in the first instance, and the New Jersey courts would so apply them. The taxpayer does not concede, however, that the parties failed to make such application of their own choice. And in any event, it urges that Section 24(c) is inapplicable in the circumstances of the case in controversy.

█ The taxpayer agrees that the law of New Jersey leaves it to the court to make an application of a payment among the several debts owed to the same person when the debtor first, and the creditor second, have failed to do so. This is consistent with general principles of law. Restatement, Contracts, Section 387 (1932); 6 Williston on Contracts, Section 1800 (Rev. ed. 1938). The case on which the taxpayer relies, however, declares that in such instance the court will apply the payments "according to its own notion of the intrinsic justice of the case". Terhune v. Colton, 1857, 12 N.J.Eq. 312, 320. And by reason of the interests of the parties, White v. Trumbull, 1836, 15 N.J.L. 314, 29 Am. Dec. 687, at least with respect to the present tax problem, it is asserted that the taxpayer's payments should be appropriated to current debts first. Nevertheless, the New Jersey courts consistently with the rule of justice, have applied payments, when it has been left to them, to the least secure debt, and in the case of running accounts, which we have in the case *sub judice,* to the earliest item. Terhune v. Colton, supra; Dey v. Anderson, 1877, 39 N.J. L. 199; Leeds v. Gifford, 1886, 41 N.J.Eq. 464, 5 A. 795, affirmed, 1888, 45 N.J.Eq. 245, 19 A. 621; Forst v. Kirkpatrick, 1903, 64 N.J.Eq. 578, 54 A. 554; Grover v. Board of Education, 1928, 102 N.J.Eq. 415, 424, 141 A. 81, affirmed, 1929, 104 N.J.Eq. 197, 144 A. 918; Naidech v. Hempfling, 1941, 127 N.J.L. 430, 24 A.2d 524; compare White v. Trumbull, supra. That also comports with general usage of the law. Restatement, Contracts, Section 394 (1932); see also, Delaware Dredging Co. v. Tucker Steve-

---

resenting back rent not previously reported by Blauvelt who was on the cash basis. This amount was added under Section 126(a) (1) of the Internal Revenue Code, 26 U.S.C.A. § 126(a) (1).

7. All three subsections of Section 24(c) must be satisfied if the credits are to be held non-deductible. Anthony P. Miller, Inc., v. Commissioner, 3 Cir.,

1947, 164 F.2d 268, 4 A.L.R.2d 1219, certiorari denied 333 U.S. 861, 68 S.Ct. 741, 92 L.Ed. 1140. In the Tax Court, the taxpayer did contend that the Estate was also on the accrual basis and consequently, Section 24(c) (2) did not apply. The Tax Court, held however, that the Estate was on the cash basis, and that ruling is not contested in this Court.

doring Co., 3 Cir., 1928, 25 F.2d 44. We therefore agree with the Tax Court in this matter, and note additionally that the conclusion reached most closely resembles the realities of the business situation, a fact always of significance in tax controversies. Indeed, to permit the taxpayer in this proceeding to effect the "judicial appropriation" it advocates through exploitation of the "common interest" arising out of the relationship specified in Section 24(c) would result in reboring the loophole that section was devised, as we show below, to fill.

We agree, also, with the Tax Court's finding that neither the taxpayer nor Blauvelt nor the Estate made any appropriation of the payments to the debts. On this score, the taxpayer has stipulated [8] that "None of the payments * * * was applied either by petitioner [taxpayer] or the recipients in satisfaction of any particular credit or credits in the accounts of the recipients." Apparently the taxpayer accords the stipulation a narrow effect, as relating only to the books of the parties. Even then the taxpayer has not succeeded in establishing an operative appropriation. Its own records[9] are according to the accepted accrual method of accounting and disclose no reason for concluding one way or the other on the issue of application of the payments. The taxpayer points to the recipients' tax returns for the years involved, emphasizing that in 1943 Blauvelt actually received $62,398.75, but reported the amounts for salary, interest and rent currently accrued in that year by the tax-

payer as owing to him, the total being $49,401.71; and in 1944 the same thing occurred.

However, we cannot see that the failure of the recipients, who were on the cash basis, to report the actual receipts in the taxable years supports the argument that they thereby elected to appropriate the payments to current debts. This would certainly be true absent evidence to show another significance to the failure to properly report income. And, as the Tax Court has pointed out, Blauvelt in fact followed the policy, apparent from the schedule already stated,[10] of reporting the lesser amount of the payments and credits accrued on the taxpayer's books in any particular year between 1935 and 1944, with the exception of 1941.

Finally, the taxpayer contends that Section 24(c) is inapplicable to the circumstances of this case, primarily because in the taxable years involved, 1943 and 1944, it in fact made payments in excess of the current credits accrued in Blauvelt's favor. Ordinarily, where the obligor is on the accrual basis, a deduction is allowed for the accrued item of expense if the liability becomes fixed and certain in the taxable year when the deduction is sought. But Section 24(c) has altered the usual. The history[11] of that section leaves no doubt that the Congress intended to prevent the distorted tax picture and the undue tax advantages made possible by the coexistence of the circumstances described in subsections (2) and (3) of Section 24(c). See Musselman Hub-Brake Co. v. Commissioner, 6 Cir.,

8. Paragraph 11 of the Stipulation.

9. In Terhune v. Colton, 12 N.J.Eq. 232, affirmed, 1857, 12 N.J.Eq. 312, express recognition was given to the requirement that the intent to make an appropriation must be manifested to the other party, and this view has been adopted in the Restatement, Contracts, Sections 387, 391 (1932). Whether this rule has been relaxed in New Jersey is open to doubt, see Grover v. Board of Education, 1928, 102 N.J.Eq. 415, 423–424, 141 A. 81, affirmed, 1929, 104 N.J.Eq. 197, 144 A. 918, although it would appear that the books of the creditor would help establish his contention that he had made an

appropriation; see 6 Williston on Contracts, Section 1799 (Rev. ed. 1938).

10. Note 3, supra.

11. H.R.Doc.No.260, 75th Cong., 1st Sess. 3 (1937) (Presidential Message); H.R. Doc.No.337, 75th Cong., 1st Sess. 15 (1937) (Report of the Joint Committee on Tax Evasion and Avoidance); H.R. Rep.No.1546, 75th Cong., 1st Sess. 29 (1937) (Report of Ways and Means Committee), adopted in Sen.Rep.No.1242, 75th Cong., 1st Sess. 31 (1937) (Report of The Committee on Finance). See Paul, The Background of the Revenue Act of 1937, 5 U. of Chi.L.Rev. 41, 69 (1937).

1943, 139 F.2d 65, 66-67. To this end, Section 24(c) prescribes for the creditor and debtor who are related by blood or in interest standards of business conduct more closely approaching those usually self-promoting in arm's-length transactions between strangers; yet it is more restrictive for Section 24(c) (1) establishes a definite time within which payment must be made to qualify the expenses for deduction. Since Section 24(c) plainly operates in anticipation of the possibility of abuse of the tax law *ex* Section 24(c), the fact that the parties intend no tax preference to themselves is irrelevant; if their dealings bring them within the Section, a deduction is not permitted. We are of the opinion that the expenses and interest here involved are within Section 24(c) and not allowable deductions.

For the reasons stated, the decision of the Tax Court will be affirmed.